United States District Court
Southern District of Texas
**ENTERED**
December 20, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

OCEANEERING INTERNATIONAL, INC., §
§
         Plaintiff, §
§
v. §   CIVIL ACTION NO. H-16-2797
§
TRENDSETTER ENGINEERING, INC., §
§
         Defendant. §

**MEMORANDUM OPINION ON CLAIM CONSTRUCTION**

This is a patent infringement suit filed by Oceaneering International, Inc. ("Oceaneering") against Trendsetter Engineering, Inc. ("Trendsetter"), involving United States Patent No. 7,380,835 ("'835 patent"). The plaintiff, Oceaneering, and the defendant, Trendsetter, disagree about the meaning of several terms used in the patent and have asked the court to construe the disputed terms. See Markman v. Westview Instruments, Inc., 116 S. Ct. 1384, 1387 (1996) ("[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court.").

### I. Background

In support of its preferred constructions, Oceaneering has filed Plaintiff Oceaneering's Opening Claim Construction Brief ("Oceaneering's Opening Brief") (Docket Entry No. 44), Plaintiff Oceaneering's Reply Claim Construction Brief ("Oceaneering's Reply

Brief") (Docket Entry No. 52), and Plaintiff Oceaneering's Response to Trendsetter's Supplemental Claim Construction Brief ("Oceaneering's Response Brief") (Docket Entry No. 56). In support of its preferred constructions, Trendsetter has filed Responsive Claim Construction Brief of Defendant Trendsetter Engineering, Inc. ("Trendsetter's Response Brief") (Docket Entry No. 46) and Supplemental Claim Construction Brief of Defendant Trendsetter Engineering, Inc. ("Trendsetter's Supplemental Brief") (Docket Entry No. 55).

The parties have also presented a Joint Claim Construction Chart pursuant to which the parties have agreed to the construction of the following term:

| Terms to be Construed | Agreed Construction |
|---|---|
| slideable flow path | a slideable component that has a flow path |

On December 13, 2016, the court held a <u>Markman</u> hearing on the claim construction issues. For the reasons stated at the hearing, the court construed the following terms:

| Disputed Term | Court's Construction |
|---|---|
| flow path sleeve | a component that at least partially surrounds the slideable flow path |
| it | no construction required |
| move longitudinally [toward/away from] | no construction required |

After carefully considering the parties' arguments, the evidence, and the applicable law, the court construes the remaining disputed claim terms as stated below.

## II. Legal Standard for Claim Construction

In Markman, 116 S. Ct. at 1387, the Court held that the construction of patent claims is a matter of law exclusively for the court. Accordingly, when the parties dispute the meaning of particular claim terms the court should consider the parties' proposed definitions, but must independently assess the claims, the specification, and if necessary the prosecution history and relevant extrinsic evidence, and declare the meaning of the disputed terms. Exxon Chemical Patents, Inc. v. Lubrizol Corporation, 64 F.3d 1553, 1556 (Fed. Cir. 1995), cert. denied, 116 S. Ct. 2554 (1996).

Courts begin claim construction inquiries by ascertaining the "ordinary and customary meaning" of the disputed claim terms. Phillips v. AWH Corporation, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc), cert. denied, 126 S. Ct. 1332 (2006) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In the absence of an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning. Teleflex, Inc. v. Ficosa North America Corp., 299 F.3d 1313, 1325 (Fed. Cir. 2002) (citing York Products, Inc. v. Central Tractor Farm & Family Ctr., 99 F.3d 1568, 1572 (Fed. Cir. 1996). Courts indulge a "heavy presumption" that a claim term carries its ordinary and customary meaning. Id. (citing CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002).

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in

the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips, 415 F.3d at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.

> In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. . . . In such circumstances, general purpose dictionaries may be helpful. In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art. Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." . . . Those sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."

Id. at 1314 (citations omitted).

Ascertaining a term's ordinary and customary meaning is the starting point for claim construction but may not be the ending point. For example, a term may not carry its ordinary and customary meaning "if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history." CCS Fitness, Inc., 288 F.3d at 1366. See Hormone Research Foundation, Inc. v.

-4-

<u>Genentech, Inc.</u>, 904 F.2d 1558, 1563 (Fed. Cir. 1990), <u>cert. dismissed</u>, 111 S. Ct. 1434 (1991) ("It is a well-established axiom in patent law that a patentee is free to be his or her own lexicographer . . . and thus may use terms in a manner contrary to or inconsistent with one or more of their ordinary meanings."). Additionally, a claim term may be interpreted more narrowly than it otherwise would if "the patentee distinguished the term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." <u>CCS Fitness</u>, 288 F.3d at 1366-67. <u>See</u> <u>Thorner v. Sony Computer Entertainment America, LLC</u>, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (explaining that only two exceptions exist to the general rule that terms carry their ordinary and customary meaning: "(1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution").

"A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." <u>O2 Micro Int'l Ltd. v. Beyond Innovation Technology Co.</u>, 521 F.3d 1351, 1361 (Fed. Cir. 2008). Ordinary meaning may also be inadequate when "parties dispute[] not the meaning of the words themselves, but the scope that should be encompassed by th[e] claim language." <u>Id.</u>

There are two types of evidence upon which courts rely in conducting claim construction inquiries: (1) intrinsic evidence (e.g., the language of the claim itself, the patent specification, and the prosecution history of the patent) and (2) extrinsic evidence (evidence external to the patent and prosecution history such as dictionaries, treatises, and expert and inventor testimony). Phillips, 415 F.3d at 1317 (citing Vitronics, 90 F.3d at 1583). The court is not required to consider these sources in any particular order; "what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." Id. at 1324.

A. Intrinsic Evidence

The language of the claim itself is "'of primary importance[] in the effort to ascertain precisely what it is that is patented.'" Phillips, 415 F.3d at 1312 (quoting Merrill v. Yeomans, 94 U.S. 568, 570 (1876)). This is "[b]ecause the patentee is required to 'define precisely what his invention is.'" Id. (quoting White v. Dunbar, 7 S. Ct. 72, 75 (1886)).

While the claim language itself should be the court's primary focus, other intrinsic sources can be helpful. For example, the specification "'is always highly relevant to the claim construction analysis'" and can be either dispositive or "'the single best guide to the meaning of a disputed term.'" Id. at 1315 (quoting Vitronics, 90 F.3d at 1582). While "[i]t is therefore entirely

-6-

appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims," id. at 1317, it is important that the specification be used only to interpret the meaning of a claim, not to confine patent claims to the embodiments described therein. See Dow Chemical Co. v. United States, 226 F.3d 1334, 1342 (Fed. Cir. 2000) ("[A]s a general rule claims of a patent are not limited to the preferred embodiment . . . or to the examples listed within the patent specification."). "'The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" Phillips, 415 F.3d at 1316 (quoting Renishaw PLC v. Marposs Società per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). "There is a fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims." Retractable Technologies, Inc. v. Becton, Dickinson and Co., 653 F.3d 1296, 1305 (Fed. Cir. 2011).

B.  Extrinsic Evidence

If the intrinsic evidence does not resolve the ambiguity in a particular claim term, the court may look to extrinsic evidence to help it reach a conclusion as to the term's meaning. See Phillips, 415 F.3d at 1317; Vitronics, 90 F.3d at 1583. The court may look to dictionaries, especially technical dictionaries, and treatises "if the court deems it helpful in determining 'the true meaning of

language used in the patent claims.'" <u>Phillips</u>, 415 F.3d at 1318 (quoting <u>Markman</u>, 52 F.3d at 980). The court, however, must always be mindful that extrinsic evidence may only supplement or clarify -- not displace or contradict -- the intrinsic evidence. See <u>id.</u> at 1319 ("[E]xtrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence."). "[H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." <u>Id.</u> at 1321.

### III. Construction of Disputed Claim Terms

The parties dispute the construction of: (1) "flow path" and (2) "coupled to." The court addresses each disputed term below.

#### A. "Flow Path"

| Disputed Term | Oceaneering's Construction | Trendsetter's Construction |
|---|---|---|
| "flow path" | a single large passage for fluid flow | (1) No construction needed; (2) A passage for fluid flow. |

The term "flow path" appears throughout the '835 patent. Oceaneering argues that its proposed construction is supported by (1) the patent title, "Single Bore High Flow Junction Plate;" (2) the Background of the Invention section, distinguishing the disclosed invention from prior art that utilized "multiple, small-bore hydraulic couplers . . . to create a sufficiently large flow

path;" (3) the claimed advantage of the described invention as "afford[ing] a large unobstructed flow path;" and (4) the singular use of "flow path" in the described embodiments.[1] Oceaneering essentially argues that the patentee disavowed the full scope of the term.

Oceaneering relies on SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337 (Fed. Cir. 2001), for the proposition that

> [w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.

SciMed, 242 F.3d at 1341. The court in SciMed construed claims common to three patents for balloon dilation catheters. The patentee argued that its patents covered both adjacent lumen and coaxial lumen arrangements. The court disagreed, concluding that the patent specifications led to "the inescapable conclusion" that the asserted claims were limited to catheters with coaxial lumens. The court relied on four portions of the patents at issue to reach its conclusion. First, the court observed that the patent's abstract identified the inflation lumen as "coaxial rather than dual in structure." Second, the court noted that the patents distinguished prior art on the basis of the use of dual lumens and

---

[1]Oceaneering's Opening Brief, Docket Entry No. 44, pp. 11-12.

pointed out the advantages of coaxial lumens. Third, the court noted that the coaxial configuration was characterized as being part of the "present invention." Finally, the court focused on the statement that the coaxial arrangement was found in "all embodiments of the present invention" as identifying a "necessary element of every variant of the claimed invention."

SciMed, although distinguishable, provides guidance. First, although the '835 patent's abstract makes no mention of the flow path component of the invention, it follows the patent title in referring to the disclosed invention as a "single bore high flow" junction plate.[2] Second, the patent distinguishes prior art, including "junction plates [that] rely on multiple, small-bore hydraulic couplers that are ganged together to create a sufficiently large flow path,' and identifies the advantage that it "affords a large unobstructed flow path in a design that uses a very simple latching mechanism."[3] Third, although the patent does not characterize a particular type of flow path as being part of the present invention, the figures in which a flow path can be seen depicting the "present invention" display a single flow path.[4]

---

[2] Abstract, '835 patent, Exhibit A to Original Complaint, Docket Entry No. 1-1, p. 2.

[3] Background of the Invention, '835 patent, Exhibit A to Original Complaint, Docket Entry No. 1-1, p. 13 lines 1:25-27, 2:3-4.

[4] '835 patent, Figs. 2-3, Exhibit A to Original Complaint, Docket Entry No. 1-1, pp. 4-5.

Finally, although the specification makes no reference to "all embodiments of the present invention" the depicted embodiments in which the flow path is visible contain a single passage.[5] Together, these portions of the patent make clear the invention does not include multiple flow paths.

Trendsetter responds that claim 17 cannot be limited to a "single" flow path or a "large" flow path because the use of the indefinite article "a[n]" before "flow path" allows for one or more flow paths. Trendsetter also argues that because the patent acknowledges that the prior art possessed a "large flow path," that limitation cannot apply. Trendsetter argues that "flow path" therefore cannot be limited to a single large passage.

The use of an indefinite article to modify a component is not dispositive. "That 'a' or 'an' can mean 'one or more' is best described as a rule," and "[t]he exceptions to this rule are extremely limited," but a patentee may "'evince[ ] a clear intent' to limit 'a' or 'an' to 'one.'" Baldwin Graphic Systems, Inc. v. Siebert, Inc., 512 F.3d 1338, 1342 (Fed. Cir. 2008). "[W]hen claim language or context suggests an ambiguity in application of the general meaning of an article, th[e] court undertakes an examination of the written description . . . to ascertain whether to limit the meaning of 'a' or 'an.'" KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1356 (Fed. Cir. 2000). "[T]he use

---

[5] Id., Figs. 1-10, pp. 3-12.

of a definite article ('said' or 'the') to refer back to an initial indefinite article does not implicate, let alone mandate the singular." Baldwin, 512 F.3d at 1343. "Moreover, standing alone, a disclosure of a preferred or exemplary embodiment encompassing a singular element does not disclaim a plural embodiment." KCJ Corp., 223 F.3d at 1356. But the '835 patent goes further. The '835 patent expressly disparages prior art that used hydraulic couplers to combine multiple flow paths for "increas[ing] the cost" of junction plates.[6] Moreover, figures depicting "the present invention" -- not just a preferred embodiment -- clearly show a single flow path. The patent therefore evinces a clear intent to limit the device to a single flow path.

Trendsetter's argument that the claim cannot be limited to a single large flow path because the prior art provided large flow paths is not persuasive. A single large flow path may, as the patent asserts, offer distinct advantages over a large flow path created by joining multiple small paths as well as a single small flow path. At any rate, Trendsetter's argument ultimately goes not to the construction but to the validity of the patent, an issue not presently before the court.[7]

---

[6]Background of the Invention, '835 patent, Exhibit A to Original Complaint, Docket Entry No. 1-1, p. 13 lines 1:25-27.

[7]Trendsetter's argument that the term "large" is indefinite is also an argument against the patent's validity and not against the proposed construction.

Finally, Trendsetter argues that Oceaneering's proposed construction would import a claim from the patent's specification. The court recognizes that

> the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice. See Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1186-87 (Fed. Cir. 1998) ("there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification"). However, the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms.

Phillips, 415 F.3d at 1323. The court concludes that a person of ordinary skill reading the entire '835 patent would understand the disclosed invention to be limited to the use of a single large flow path.

B.   "Coupled to"

| Disputed Term | Oceaneering's Construction | Trendsetter's Construction |
|---|---|---|
| "Coupled to" | No construction needed | Directly Joined |

Trendsetter argues that the term "coupled to" should be construed to mean directly joined. Oceaneering argues that "coupled to" should be given its ordinary meaning, which would include both direct and indirect connection.[8]

---

[8] See Oceaneering's Opening Brief, Docket Entry No. 44, p. 16 ("This usage is consistent with the ordinary meaning of the term as defined in general purpose dictionaries. See, e.g., Ex. B (American Heritage Dictionary, Second College Edition, Houghton Mifflin Co. (1982), at 332) ('**couple** . . . v. **-pled, -pling, -ples.** -tr. 1. To link together; connect.').").

The court begins with the presumption that terms take their ordinary meaning absent clear intent by the patentee to redefine them. Trendsetter argues that all of the examples of coupling found in the '835 patent involve direct physical contact. Trendsetter argues that the patent therefore "teaches" that the patentee eschews the inclusive meaning of "couple to." But Trendsetter does not explain how direct coupling is essential to the disclosed invention or indicate how direct coupling would distinguish the invention from prior art. In short, Trendsetter does not show that a person of ordinary skill in the art reading the patent would conclude that only direct coupling is permitted.

Trendsetter cites several cases in which courts defined the term "coupled" as "directly connected" or "directly connecting." These cases are distinguishable. In one case, the court concluded that the structure of the disclosed invention was such that "there must be [a direct] connection" and noted that the patentee "indicated it could accept (but does not prefer) 'directly coupled,'" neither of which is the case here. NuVasive, Inc. v. Globus Medical, Inc., No. C.A. 10-849-LPS, 2013 WL 3705731, at *7 (D. Del. July 12, 2013). In another case, the court relied on "the prosecution history in particular," as well as intrinsic evidence, to determine that the term "coupled" used in a medical device patent meant "adjacent and directly connected to." Boston Scientific SciMed, Inc. v. ev3, Inc., 502 F. Supp. 2d 931, 937 (D. Minn. 2007). Neither party has offered evidence from the

prosecution history of the '835 patent. In another case, the court found that a direct connection was required in order to achieve the "principal goal of the patent." OPTi, Inc. v. Advanced Micro Devices, Inc., Civil Action No. 2:07-CV-278(TJW), 2009 WL 2424029, at *8 (E.D. Tex. Aug. 5, 2009). Trendsetter has not shown that direct joining is required to achieve the principal goals of the patent at issue.

The final relevant case[9] cited by Trendsetter involved the phrase "conductively coupled" and turned on two distinct methods of transmitting electrical signals. See Greatbatch Ltd. v. AVX Corp., No. 13-723-LPS, 2015 WL 1383656, at *4-5 (D. Del. March 20, 2015). The party seeking to construe the term as involving "physical contact" submitted unrebutted testimony that a person of ordinary skill would not understand the term "conductive coupling" to include capacitive coupling, which could be achieved without physical contact. Trendsetter offered no such testimony.

Trendsetter objects to the use of a laymen's dictionary to define "couple to." The Federal Circuit has cautioned against the use of non-scientific dictionaries to ascertain the meanings of technical terms. See Anderson v. International Engineering & Mfg., Inc., 160 F.3d 1345, 1348-49 (Fed. Cir. 1998) ("[D]ictionary

---

[9]The case cited by Trendsetter construing "coupled" to mean "securely joined" is inapposite because the dispute in that case was over whether the two portions of the disclosed invention were "locked" and not over whether they were joined directly. See Sauder Mfg. Co. v. J Squared, Inc., No. 3:14CV962, 2015 WL 11117228, at *1 (N.D. Ohio June 9, 2015).

definitions of ordinary words are rarely dispositive of their meaning[s] in a technological context. A word describing patented technology takes its definition from the context in which it was used by the inventor."). However, neither party has argued that "coupled to," as used in the '835 patent, is a technical term. Trendsetter argues instead that the patent teaches a limited use of the term to refer to direct couplings.

The court is not convinced that the patentee intended "coupled to" to have any special or technical meaning. Nor is it convinced that the case law cited by Trendsetter calls for special construction. Although the court declines to construe the term, it concludes that "coupled to" may refer to either direct or indirect coupling.

## IV.   Order

In light of the clear intrinsic evidence the court did not need to resort to extrinsic evidence. For the reasons stated above, the court adopts the following constructions for the disputed terms:

| Disputed Term | Construction |
|---|---|
| Flow Path | a single large passage for fluid flow |
| Coupled To | No construction required (includes both direct and indirect coupling) |

**SIGNED** at Houston, Texas, on this 20th day of December, 2016.

/s/ Sim Lake

SIM LAKE
UNITED STATES DISTRICT JUDGE